IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RHEANNA S. HARBIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-136-TLW |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Rheanna S. Harbin seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income benefits under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 28). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**INTRODUCTION**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 36–year old female, first applied for Title XVI benefits on August 14, 2007. (R. 103-06). After plaintiff exhausted her administrative remedies, the case (09-cv-688) was remanded based on the ALJ's failure to consider plaintiff's diagnosis of carpal tunnel syndrome. (R. 421-41). While that case was pending, plaintiff again applied for Title XVI benefits on March 3, 2011. (R. 444). Upon receipt of the order remanding the initial application, the Appeals Council consolidated the cases. (R. 442-44). Plaintiff claimed that she had been unable to work since March 1, 2007, due to multiple physical and mental issues, including osteoarthritis, neuropathy, degenerative disc disease, carpal tunnel syndrome, migraines and daily headaches, depression, anxiety, and obesity. (R. 577). The ALJ held a consolidated hearing on plaintiff's claims on November 2, 2011. (R. 377-408). The ALJ issued a decision on January 27, 2012, denying benefits and finding plaintiff not disabled because she was able to perform other work. (R. 314-36). The Appeals Council denied review, and plaintiff appealed. (R. 311-13).

**The ALJ's Decision**

The ALJ found that plaintiff had not engaged in substantial gainful activity since her application date. (R. 319). Plaintiff had severe impairments of "degenerative disc disease and degenerative joint disease of the cervical and lumbar spine, carpal tunnel syndrome, adjustment

disorder and anxiety disorder." (R. 319). Plaintiff's impairments did not meet or medically equal a listing. (R. 320).

With respect to plaintiff's mental impairments, the ALJ reviewed the "paragraph B" criteria and found that plaintiff had mild limitations in activities of daily living and moderate limitations in social functioning and in concentration, persistence, and pace. (R. 320-21). In making the "paragraph B" findings, the ALJ accepted the May 2011 opinion of Dr. Jeri Fritz and rejected the August 2010 opinion of Dr. Stephanie Crall. (R. 319-20). The ALJ noted that while Dr. Crall diagnosed plaintiff with a cognitive disorder, that finding was "based on an object recall test." (R. 319). In contrast, the ALJ found the Dr. Fritz's opinion was based on multiple objective tests, including the Wechsler intelligence test and the Folstein-Mini-Mental Status test. (R. 319-20). After weighing the opinions of these two consultative examining psychologists, the ALJ found that plaintiff's cognitive disorder was not severe. Id.

The ALJ then reviewed plaintiff's testimony, as well as the tests and notes from her treating physicians. (R. 322-25). Objective testing revealed that plaintiff had "mild carpal tunnel syndrome in her right wrist;" mild scoliosis; degenerative spondylosis of her cervical spine; disc protrusion at L5-S1; and degenerative disc disease. (R. 323-24). The ALJ's decision implicitly accepts all of the treating physician's diagnoses and notes. (R. 323-25). Two of plaintiff's physicians determined that plaintiff was not a good surgical candidate. Id. Plaintiff had been given a cervical collar in 2007, but her doctor recommended discontinuing its use because it "would weaken her neck muscles and add to her debilitation." (R. 325). Plaintiff refused to stop wearing the collar. Id.

The ALJ also weighed the opinions of the consultative examining physicians and the nonexamining agency physicians. (R. 326-27). The ALJ summarized those opinions as follows:

- Dr. Luther Woodcock, a nonexamining agency physician, completed two physical residual functional capacity assessments. In the first, dated August 2007, he opined that plaintiff could perform medium work with occasional kneeling and crouching. His second opinion, dated May 2011, stated that plaintiff could perform sedentary work, with occasional climbing, balancing, stooping, kneeling, crouching and crawling. The ALJ gave Dr. Woodcock's opinions little weight because plaintiff's pain levels prohibited medium work. (R. 326-27).
- Dr. Walter Bell, also a nonexamining agency physician, completed a residual functional capacity form in October 2010. Dr. Bell opined that plaintiff could perform light work, with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Plaintiff had an additional limitation to frequent handling and fingering. The ALJ gave Dr. Bell's opinion moderate weight because it was "based on the objective findings that were mostly mild, and did not support more restrictive limitations found in the evidence." (R. 325, 327).
- Dr. Diane Hyde, a nonexamining agency psychiatrist completed a Psychiatric Review in September 2010. She opined that plaintiff had moderate depression and anxiety and "some impairment in functional memory." For the "paragraph B" criteria, plaintiff had mild to moderate limitations in all three areas. Dr. Hyde's mental residual functional capacity assessment stated that plaintiff could perform simple tasks with routine supervision and could interact superficially with co-workers and supervisors. Plaintiff could not interact with the public. (R. 325). The ALJ gave great weight to Dr. Hyde's opinion because it was consistent with the evidence and was based on a review of the medical records and consultative examinations. (R. 327).

The ALJ also found plaintiff not entirely credible. (R. 326).

Based on this evidence, the ALJ found that plaintiff retained the residual functional capacity to perform light work with the following restrictions: only occasional climbing, balancing, stooping, kneeling, crouching, and crawling; frequent, but not continuous handling and fingering; superficial and incidental interaction with coworkers and supervisors; no interaction with the public; and only simple, routine tasks. (R. 322).

Plaintiff could not return to her past relevant work as an elementary school teacher or nursery school attendant, but she could perform other work – light jobs as a housekeeper, light packager, or fruit cutter and sedentary jobs as a touchup screener, fishing reel assembler, and hand suture winder. (R. 328-29).

**ANALYSIS**

Plaintiff argues that the ALJ's residual functional capacity findings are not supported by substantial evidence because the ALJ did not properly weigh the medical opinion evidence and ignored other medical opinion evidence. Plaintiff raises a number of issues with the ALJ's analysis of the medical opinion evidence; however, only two issues, the ALJ's failure to weigh the opinions of Dr. Wade and Dr. Gourd, require remand.

The ALJ discussed the outcome of the EMG testing on plaintiff's legs, which was normal (R. 324), but he did not address Dr. Wade's comments about plaintiff's mobility. Plaintiff argues that Dr. Wade found plaintiff to be disabled based on the fact that she used a wheelchair and could not "sustain her weight independently." (Dkt. 14, R. 822). The Commissioner argues that Dr. Wade's comments are opinions reserved to the Commissioner and can never be given controlling weight. (Dkt. 20). The Commissioner also argues that Dr. Wade's report is inconsistent with the medical evidence. Id.

5

Plaintiff also argues that the ALJ ignored the opinion of consultative examining physician, Dr. Johnson Gourd. (Dkt. 14). Plaintiff contends that the ALJ did not address Dr. Gourd's diagnosis at either step two or step four; therefore, the ALJ's residual functional capacity findings are not supported by substantial evidence. Id. The Commissioner contends that the "one-time diagnosis" is contradicted by multiple objective medical tests and plaintiff's failure to establish any functional limitations. (Dkt. 20). The Commissioner implies that the ALJ was not required to discuss the diagnosis or Dr. Gourd's opinion at all because the existence of a diagnosis is not the proper measure of an alleged impairment. Id.

Although plaintiff frames the issue as a question of substantial evidence, plaintiff's arguments address the manner in which the ALJ treated the medical opinion evidence. Because the opinions of Dr. Wade and Dr. Gourd, if adopted by the ALJ, would impact the residual functional capacity findings and because Dr. Wade would likely be considered a treating physician, the ALJ erred in failing to discuss and weigh those opinions.

The regulations provide that the ALJ must evaluate all of the medical opinions in the administrative record. See 20 C.F.R. § 416.927(c). Here, the ALJ gives no indication whether he considered the opinions of Dr. Gourd and Dr. Wade because he does not discuss them. Dr. Gourd is clearly a consultative examining physician. Under 20 C.F.R. § 416.902, however, Dr. Wade very likely would be considered a treating physician; however, it is not clear whether the ALJ considered Dr. Wade not to be a treating physician, or, as the Commissioner argues, that the ALJ found Dr. Wade's opinion to be one on an issue reserved to the Commissioner. Either way, the ALJ erred in failing to discuss Dr. Wade's opinion in any context.

If Dr. Wade is a treating physician under 20 C.F.R. § 416.902, then the ALJ was required to discuss that opinion and the weight given to it. See Doyal v. Barnhart, 331 F.3d 758, 762 (10th

Cir. 2003) (holding that "[i]n all cases, the regulations require that the ALJ 'give good reasons' in the notice of determination or opinion for the weight that is given the treating physician's opinion"). Even if, as the Commissioner argues, Dr. Wade's opinions were opinions on issues reserved to the Commissioner, "the ALJ was still required to provide an evaluation of the opinions and explain his reasons for either rejecting or accepting them." Mayberry v. Astrue, 461 Fed.Appx. 705, 708 (10th Cir. 2012) (unpublished)[1] (citing SSR 96-5p).

In this case, it is likely that Dr. Wade would be considered a treating physician. The records indicate that he saw plaintiff for a number of visits in late 2010 and early 2011. (R. 737-40). During those visits, Dr. Wade examined plaintiff and conducted an EMG study of her legs, which was normal. (R. 740). Dr. Wade also noted that plaintiff had normal strength in her arms and legs, but she had hyperactive reflexes. (R. 739). He also noted that "[s]he moves primarily in the wheelchair." Id. Dr. Wade recommended referring plaintiff to a neurosurgeon, but the record does not indicate that plaintiff ever saw a neurosurgeon. Id. In February 2011, Dr. Wade completed a medical release for plaintiff to apply for membership at The Center for Individuals with Physical Challenges, a group that "provides rehabilitative services, therapeutic recreation, and leisure activities for persons with physical disabilities." (R. 821-22). In that release, Dr. Wade defined plaintiff's impairment as "proximate extremity weakness" due to cervical spinal stenosis. Id. Dr. Wade also noted that plaintiff used a walker and wheelchair and was "unable to sustain weight independently." (R. 822). He recommended that plaintiff receive gait training. (R. 821).

Even if the ALJ were to determine that Dr. Wade is not a treating physician, the ALJ would still have been required to evaluate Dr. Wade's opinion because the ALJ did not give

---

[1] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

controlling weight to any treating physician's opinion. In this case, the ALJ weighed only the opinions of the consultative examining psychologists and the nonexamining agency physicians. (R. 326-27). The ALJ discussed the findings of one of plaintiff's treating physicians, Dr. Stephen Landgarten, but did not weigh that opinion,[2] so the ALJ did not give controlling weight to a treating physician's opinion.

If an ALJ determines that the treating physician's opinion is not entitled to controlling weight, he must address all of the medical opinions, using the same six factors used to analyze treating physician's opinions. See 20 C.F.R. §§ 416.927(c) and (e) (addressing non-examining physician's opinions). In that circumstance, the ALJ must also weigh all of the medical opinions. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012). Keyes-Zachary also holds that failure to address all opinions can be harmless error, but only when there are no "inconsistencies either among these medical opinions or between the opinions and the ALJ's RFC." Id. at 1161-62. The harmless error analysis is appropriate when all opinions are consistent because "[w]hen the ALJ does not need to reject or weigh evidence unfavorably to determine a claimant's RFC, the need for express analysis is weakened." Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004).

Here, the failure to analyze Dr. Wade and Dr. Gourd's opinions cannot be considered harmless error because these opinions conflict with the opinions of the nonexamining agency physicians and the ALJ's residual functional capacity findings. The ALJ found that plaintiff could perform light work, which requires plaintiff to stand and/or walk for six hours in an eight-hour workday. If, as Dr. Wade believed, plaintiff could not sustain her weight independently, she would not be able to walk or stand for six hours. Dr. Gourd's opinion, in some ways, supports Dr. Wade's findings. Dr. Gourd found that plaintiff had a "pronounced shuffling type gait" and

---

[2] Plaintiff does not allege error on the ALJ's failure to weigh Dr. Landgarten's opinion.

required the use of a cane. (R. 673). Plaintiff had full strength and range of motion, but she had pain with every movement. (R. 673, 674-77). Dr. Gourd also conducted the 18-point fibromyalgia test and found that plaintiff had tenderness at all eighteen points. (R. 673, 677). Dr. Gourd opined that plaintiff's exam was reliable and stated that he believed "she remains undiagnosed for [the] underlying cause [of her symptoms]." (R. 673). If the ALJ had adopted either or both of these opinions, the ALJ could not have found that plaintiff could perform light work. As plaintiff notes in her brief, a finding of sedentary work would likely have rendered plaintiff disabled due to her carpal tunnel syndrome. (Dkt. 14).

Dr. Gourd's opinion also warranted discussion because the ALJ gave moderate weight to the opinion of Dr. Bell, a nonexamining agency physician. (R. 326-27). Ordinarily, a treating physician's opinion is given the most weight, followed by the examining physician's opinion. See 20 C.F.R. §§ 416.927(c)(1) and (2). Nonexamining physicians' opinions are normally entitled to the least weight of all. See id. If the ALJ determined that Dr. Bell's opinion was due greater weight than that of Dr. Gourd, the ALJ should have explained his reasons for that decision.

## CONCLUSION

For these reasons, the ALJ should have discussed and weighed the opinions of Dr. Wade and Dr. Gourd. Accordingly, the Court **REVERSES AND REMANDS** the case for further proceedings.

SO ORDERED this 17th day of June 2014.

_____
T. Lane Wilson
United States Magistrate Judge